**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerry J. Lucey,<br><br>              Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>              Defendant. | No. CV11-950-PHX-JAT<br><br>**ORDER** |

Plaintiff Jerry Lucey appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on his appeal (Doc. 17.)

**I.     BACKGROUND**

On April 25, 2007, Plaintiff filed Title II and Title XVI applications for a period of disability, disability insurance benefits, and supplemental security income benefits with a January 14, 2007 onset date. Plaintiff later changed his onset date to December 1, 2008. After the Commissioner denied Plaintiff's application initially and upon reconsideration, Plaintiff testified at a hearing before Administrative Law Judge Philip Moulaison (the "ALJ") on July 8, 2009. The ALJ issued an unfavorable decision on November 24, 2009. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed this appeal pursuant to 42 U.S.C. §405(b) on May 12, 2011. Plaintiff has the following impairments: atrial fibrillation; diabetes; hypertension; and adhesive capsulitis.

## II. LEGAL STANDARD

A district court:
> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)(internal quotation omitted).

## III. DISCUSSION

To qualify for disability benefits under the Social Security Act a claimant must show, among other things, that he is "under a disability." 42 U.S.C. §423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

> education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §423(d)(2)(A).

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. §404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. §404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. §404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting; carrying; reaching; understanding, carrying out and remembering simple instructions; responding appropriately to co-workers; and dealing with changes in routine. 20 C.F.R. §404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." 20 C.F.R. §404.1509 (incorporated by reference in 20 C.F.R. §404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. §404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's

"residual functional capacity based on all the relevant medical and other evidence in [the] record." 20 C.F.R. §404.1520(e). A claimant's "residual functional capacity" (the "RFC") is the most he can do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. §404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. §404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. §404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. §404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner has the burden of proving the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In this case, the ALJ concluded at step four of the sequential process that Plaintiff was not disabled. The ALJ found that Plaintiff had the residual functional capacity to perform light level physical exertion and should avoid exposure to cold environments. The ALJ determined that Plaintiff was capable of performing his past relevant work as a driver, cannery laborer, and assembler.

### A. Credibility Determination

The ALJ did not accept Plaintiff's complaints regarding his level of symptoms and limitation during the relevant time. (Tr. 298.) If a claimant produces objective medical evidence of an underlying impairment, as Plaintiff did here, then the ALJ cannot reject the claimant's subjective complaints based solely on a lack of objective medical support

for the alleged severity of the pain. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). If the ALJ finds the claimant's subjective testimony not credible, the ALJ must make findings sufficiently specific to allow the reviewing court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Id*. at 856-57. If no affirmative evidence of malingering exists, then the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony about the severity of his symptoms. *Id*. at 857.

The Commissioner argues that the ALJ did not have to give clear and convincing reasons for disbelieving Plaintiff's testimony because the standard found in *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc), which does not mention the clear and convincing reasons test, has not been overturned by an *en banc* Ninth Circuit Court of Appeals decision. The Commissioner contends that the "clear and convincing reasons" standard is found only in subsequent panel opinions. The Commissioner offers the following as the appropriate standard: whether the ALJ's credibility findings are "supported by the record" and "sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds." *Id*.

The Commissioner is correct that it would take another *en banc* decision from the Ninth Circuit to overturn its earlier en banc decision in *Bunnell*. But it would not take an *en banc* court to elaborate on the earlier holding. The Ninth Circuit Court of Appeals seemingly has accepted the "clear and convincing" reasons test as further development of the *Bunnell* standard, not a repudiation of it. Regardless of whether the clear and convincing reasons test applies, the ALJ provided clear and convincing reasons for partially discrediting the subjective reporting of Plaintiff.

After reviewing the evidence, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they conflicted with the ALJ's residual functional capacity assessment finding Plaintiff capable of sustaining work activities at the light exertional level. In support of

that conclusion, the ALJ recounted Plaintiff's hearing testimony that he could walk up to one to two miles, stand for a few hours, sit for a few hours, and lift and carry 20 to 30 pounds a short distance, which was inconsistent with allegations of total disability.

The ALJ also noted that Plaintiff stopped working at his last job in November of 2008 for reasons unrelated to his impairments and that the record did not indicate significant deterioration of Plaintiff's condition after November 2008. Plaintiff stopped working his last job because his employer went bankrupt. The ALJ wrote, "The fact that the claimant's impairments did not prevent work prior to December 1, 2008, would strongly suggest that they would not presently prevent the claimant from sustaining work activity." (Tr. 21.)

In making his credibility determination, the ALJ considered Plaintiff's earnings records for the second and third quarters of 2009, which indicated that Plaintiff received unemployment benefits after the alleged onset of disability. To receive unemployment benefits, Plaintiff had to have attested that he was physically and mentally able to work and that he was actively seeking work. The ALJ found that Plaintiff's receipt of disability benefits was "clearly in conflict with the allegation that he was disabled and unable to work at that time." (Tr. 21.)

Plaintiff testified at the hearing that he left his last employment because the company went bankrupt. (Tr. 47.) A claimant's testimony that he left his last employment for reasons other than his impairment provides a specific and cogent reason for rejecting the claimant's subjective symptom testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)("[T]he ALJ satisfied the *Bunnell* standard by providing specific, cogent reasons for disregarding [claimant's] testimony. For example, the ALJ stated that she found Bruton's subjective pain complaints not credible because, *inter alia*: (1) Bruton stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off . . . .").

Plaintiff argues the ALJ erred in relying on his testimony regarding the bankruptcy of his last employer because Plaintiff also testified that even if the company had not gone

- 6 -

bankrupt, the company had a point system for attendance and "When you get so many days of missing, they fire you. And I was right there anyway." (Tr. 47.) But Plaintiff did not testify that his alleged attendance issues resulted from his impairments. Moreover, "right there" is not "there." In any case, it is not this Court's function to reweigh the evidence that was before the ALJ. Plaintiff's undisputed testimony is that he left his last employment because his employer went bankrupt,[1] which was a valid reason for doubting his credibility.

Plaintiff also argues, citing *Carmickle v. Commissioner, Social Security Administration*, 533 F.3d 1155 (9th Cir. 2008), that the ALJ erred in discrediting his subjective symptom testimony based on his receipt of unemployment benefits after his alleged disability onset date. In *Carmickle*, the ALJ gave less weight to the claimant's testimony, in part, because he received unemployment benefits during the time of his alleged disability. *Id*. at 1161. The Ninth Circuit Court of Appeals noted that receipt of unemployment benefits can undermine a claimant's alleged inability to work full time. *Id*. at 1161-62 (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). But the appellate court found that the record did not establish whether the claimant had held himself out as available for full-time or part-time work, and only the former would be inconsistent with the claimant's disability allegations. *Id*. at 1162. The appellate court therefore found that substantial evidence did not support that particular basis for the ALJ's credibility determination. *Id*.

Here, however, the Commissioner points out in his response brief that Arizona unemployment law requires a claimant to hold himself out as available for full-time work to receive unemployment insurance. (Doc. 18, p. 8.) Plaintiff does not deny in his reply brief that he had to hold himself out as available to do full-time work in order to receive his Arizona unemployment benefits. The Court therefore finds *Carmickle* inapposite and

---

[1] Although Plaintiff's last employment ended shortly before his amended onset date, as the ALJ points out, nothing in the record indicates that Plaintiff's condition deteriorated significantly in the months following the amended alleged onset date and his former employer's bankruptcy.

further finds that the ALJ did not err in considering Plaintiff's receipt of unemployment benefits when making his credibility finding.

The Court holds that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms. The Court therefore will not reverse the Commissioner on that basis.

### B.    Medical Source Opinion

Plaintiff argues the ALJ erred in weighing the medical source opinion evidence. Plaintiff contends the ALJ incorrectly gave great weight to the fact that no treating physician gave opinion evidence regarding Plaintiff's level of restriction. Plaintiff further argues the ALJ erred in giving great weight to the Commissioner's consultative examiner because the consultation took place before Plaintiff's amended onset date and the examiner therefore did not have all the pertinent medical records. Plaintiff finally argues that despite giving great consideration to the RFC conclusions reached by state agency physicians, the ALJ did not address or resolve the disparity between his RFC (without limitations due to shoulder pain and reduced range of motion) and the RFC of the state-agency physician, which included such restrictions.

No medical source ever opined that Plaintiff suffered from any work limitations. The ALJ did not err in giving great weight to the fact that no medical source ever suggested that Plaintiff suffered from disabling limitations. Nor did the ALJ err in giving weight to the opinion of the examining physician who examined Plaintiff in 2007 where the ALJ notes that the record did not establish a significant change in circumstances from July 2007 to the time of the hearing. Finally, Plaintiff's last argument regarding the RFC of the state-agency physician does not relate to the proper weight to give reviewing state-agency physicians, but instead involves the adequacy of the ALJ's RFC.  The Court therefore finds that the ALJ did not err in weighing the medical source opinions.

### C.     RFC Errors

Plaintiff argues that the ALJ's RFC was deficient for a few reasons: 1) it did not include shoulder limitations with respect to reaching, pushing, and pulling; 2) it did not properly assess Plaintiff's exertional capacity because it did not set forth exertional limitations in terms of a sustained eight-hour work day; and 3) it did not account for the impaired ability to sustain functioning over the course of a month due to the nature and frequency of atrial fibrillation episodes.

The ALJ did not include shoulder limitations with respect to reaching, pushing, and pulling in his RFC and therefore did not consider those limitations when determining whether Plaintiff could perform his past work.  The record, including the opinions of the state-agency physicians, supports the existence of left shoulder limitations.

The Commissioner seems to concede the ALJ erred in not including shoulder limitations in the RFC, but asserts the error was harmless because adding the limitation would not have changed the ALJ's decision.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)(error is harmless if inconsequential to the ultimate nondisability determination).  The Commissioner first argues the error was harmless because two of the jobs identified as Plaintiff's past work "do not seem to require pushing or pulling, as described by the *Dictionary of Occupational Titles (DOT)*, assembler, production, *DOT* 706.687-010, and driver, *DOT* 919.683-014."  (Doc. 18, p.14.)  The Commissioner next argues that the job of assembler, as Plaintiff described he performed it, did not require more than occasional pushing or pulling.  The Commissioner finally argues that because Plaintiff did not have any limitations using his dominant, upper-right extremity, it "is reasonable to conclude that, even if his past work did require more than occasional pushing or pulling, he could perform that function with his right hand exclusively."  (Doc. 18, p. 14.)

The Commissioner's harmless error arguments invite this Court to usurp the role of the ALJ.  It is not for the Court or the Commissioner, in later briefing, to find facts regarding the claimant's impairments and the impact of those impairments on the

- 9 -

claimant's residual functional capacity. Nor can the Court determine that certain past jobs "do not seem to require pushing or pulling" or that a claimant probably could have performed his past work duties using only his dominant hand. It is the ALJ's job to consider all impairments, including those that are not severe, and any related symptoms when assessing the claimant's RFC. 20 C.F.R. §404.1545(a)(1). The ALJ's failure to consider Plaintiff's shoulder limitations when assessing his RFC and his ability to do past work was error, and the Court cannot say that the error was harmless.

Because the Court finds the ALJ erred in not considering all of Plaintiff's limitations when assessing his RFC and will remand on that basis for further proceedings, the Court need not address Plaintiff's remaining arguments regarding the RFC. But the Court notes that on remand the ALJ should assess Plaintiff's exertional capacity in terms of a sustained eight-hour work day, five days a week, or equivalent schedule.

Accordingly,

**IT IS ORDERED** Affirming in part and reversing in part the Commissioner's denial of disability benefits.

**IT IS FURTHER ORDERED** remanding for further administrative proceedings in accordance with this Order.

Dated this 30th day of July, 2012.

James A. Teilborg
United States District Judge